Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3283 | **DATE** | 11/25/2003 |
| **CASE TITLE** | Mattenson vs. Baxter Healthcare Corp | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, defendant's attorney-client and work product privilege does not protect the disputed documents from disclosure pursuant to the crime/fraud exception. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 2 6 2003 | |
| | Notified counsel by telephone. | | date docketed | 115 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MF | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES R. MATTENSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 02 C 3283 |
| | ) | |
| v. | ) | Judge John W. Darrah |
| | ) | |
| BAXTER HEALTHCARE CORPORATION, | ) | DOCKETED |
| | ) | |
| Defendant. | ) | NOV 2 6 2003 |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Charles Mattenson, filed suit against Defendant, Baxter Healthcare Corporation, alleging age discrimination in violation of the Age Discrimination Employment Act of 1967 ("ADEA"). A jury trial commenced, and issues pertaining to certain documents arose. These issues included: (1) the inadvertent disclosure of a purported privileged document by the Defendant, (2) whether two additional documents to which Defendant has withheld as privileged are discoverable, (3) the disclosure of another document produced by the Defendant that appears to have been altered prior to and/or after production (three different versions of the same document were subsequently produced), and (4) the disclosure of over 1,500 pages of documents at trial that the Defendant had not previously disclosed. The first of the above two issues is presently addressed, and judgment as to the last two issues is reserved. The Court has considered the memoranda filed by the parties, including Baxter's untimely supplemental submission, the relevant testimony, and the documents at issue.

## BACKGROUND

A brief summary of the Plaintiff's theory of the case and the Defendant's defense of the case is pertinent. Plaintiff has claimed that Baxter constructively discharged him via a mid-year

performance review that was based on and contained false statements. Further, that the false performance review was used as pretext for attempting to put Plaintiff on a performance plan. Plaintiff claims that Baxter did not act in good faith and that the decision to terminate his employment with Baxter was made prior to the drafting of his performance review and a meeting with him on July 19, 2001, to discuss the performance review. Defendant contends that the Plaintiff voluntarily quit his employment with Baxter and that it has acted in good faith.

Prior to trial, Defendant produced a privilege log that identified handwritten notes of Stephanie Bradley, Vice-President and Associate General Counsel of Baxter, taken on July 30, 2001, in relation to a conversation with Marla Persky, Deputy Counsel of Baxter, "regarding settlement of Charles Mattenson matter." The privilege log identified this document as bates stamp PRV0071 (hereinafter "Court's Exhibit 2 "). The privilege log also identified handwritten notes taken by Bradley, at a July 16, 2001 meeting with Persky and Michael Schiffer, Chief Patent Counsel of Baxter, "regarding Charles Mattenson performance". The privilege log identifies these documents as bates stamp PRV0072-PRV0073 (hereinafter "Court's Exhibit # 3 "). Baxter withheld discovery of the these documents claiming that they were protected from discovery based on the attorney-client privilege and the work product doctrine.

At trial, Persky admitted that she met with Bradley and Schiffer on July 16, 2001, to discuss Mattenson's mid-year performance review. However, Persky denied that she ever contemplated litigation or firing Mattenson prior to meeting with Mattenson and Schiffer. The purpose of the July 16, 2001 meeting was only to discuss Mattenson's mid-year performance review.

Mattenson attempted to impeach Persky's testimony with a handwritten note prepared by Persky during a July 16, 2001 conversation with Bradley regarding severance benefits for Mattenson.

2

Persky admitted that she prepared the notes regarding Mattenson's severance benefits but continued to deny that she ever intended on firing Mattenson. In a further attempt to impeach Persky, Mattenson showed Persky a privilege log that identified the notes of the July 16, 2001 meeting as being withheld by reason of a claim that they were privileged pursuant to the work product doctrine, which was inconsistent with Persky's testimony. When examined about the July 16, 2001 meeting, Persky testified that Bradley told her how to prepare a performance plan but did not give her the substance of what to write. Schiffer also testified he never sought or received legal advice from Bradley at the July 16, 2001 meeting.

While attempting to impeach Persky, Mattenson produced Court's Exhibit #2. Baxter objected, arguing that the production of the document was privileged and inadvertently disclosed. The Court overruled the objection.

Following the disclosure of Court's Exhibit #2, which included notes contrary to Persky and Schiffer's testimony, and Persky and Schiffer's testimony, which was contrary to Baxter's alleged work product privilege as to Court's Exhibit #3, the Court ordered that Baxter provide the disputed documents to the Court for an *in camera* review to determine the applicability of the crime/fraud exception to the claimed privilege. Baxter provided a copy of the alleged privileged documents for an *in camera* review. However, the Court had to request the original documents as the second Xeroxed page of the produced document (PRV0073) was not complete. That same day, it came to the Court's attention that there were at least two different versions of another document that Baxter had produced to Mattenson and that had been shown to the jury. After ordering Baxter to produce the original of that document, it was discovered that a third version of the document existed and that the document(s) had been altered.

3

## ANALYSIS

The party seeking to invoke the attorney-client privilege bears the burden of proving the essential elements of the privilege. *See United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (*Evans*). The elements include: (1) legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relate to that purpose, (4) are made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal advisor, (8) except if the protection is waived.

Assuming Court's Exhibit #2, Bradley's handwritten notes of the July 30, 2001 conversation with Persky, is privileged and was inadvertently disclosed, it must be determined whether Baxter waived the privilege. The party seeking to assert the privilege bears the burden of showing that the privilege was not waived. *See Evans*, 113 F.3d at 1461; *Consolidated Litig. Concerning Harvesters Disposition of Wis. Steel*, 666 F.Supp. 1148, 1157 (N.D. Ill. 1987).

Inadvertent disclosure can, but not necessarily always, result in the same result as intentional waiver. *See Dellwood Farms, Inc. V. Cargill, Inc.*, 128 F.3d 1122, 1127 (7th Cir. 1997) (*Dellwood*). When waiver is found based on the inadvertent disclosure of material, it is intended to punish the person claiming the privilege for a mistake. *Dellwood*, 128 F.3d at 1127. However, committing a mistake "is not by itself a compelling reason for stripping a person of his privilege." The severity of the punishment for a mistake should be proportionate to the gravity of the mistake. *Dellwood*, 128 F.3d at 1127.

This standard set forth in *Dellwood* governs waiver of a privileged document due to inadvertence. *International Oil, Chemical & Atomic Workers, Local 7-517 v. Uno-ven Co.*, 170 F.3d 779, 784 (7th Cir. 1999). Generally, this standard is applied using a balancing test. *See Snap-*

4

*On Inc. v. Hunter Eng. Co.*, 29 F. Supp. 2d 965, 972 (E.D. Wis. 1998) (*Snap-On*); *R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, 2001 WL 1571447 (N.D. Ill. Dec. 7, 2001) (*R.J. Reynolds*); *Sanner v. Board of Trade of the City of Chicago*, 181 F.R.D. 374, 379 (N.D. Ill. 1998); *International Oil, Chemical & Atomic Workers, Local 7-517 v. Uno-ven Co.*, 1998 WL 100264 (N.D. Ill. Feb. 23, 1998) (collectively finding that the balancing test comports with standard set forth in *Dellwood*); *see also Urban Outfitters, Inc. v. DPIC Co.*, 203 F.R.D. 376, 380 (N.D. Ill. 2001) (*Urban Outfitters*); *Tokar v. City of Chicago*, 1999 WL 138814 (N.D. Ill. March 5, 1999) (*Tokar*) (applying balancing test without citation to *Dellwood*).

Under the balancing test, a court weighs: (1) the reasonableness of the precautions taken to prevent the disclosure, (2) the time taken to rectify the error, (3) the scope of the discovery, (4) the extent of the disclosure, and (5) the overriding issue of fairness. *Urban Outfitters*, 203 F.R.D. 380.

Here, the document is now said to be inadvertently disclosed during discovery. Baxter did not seek to have the document returned prior to trial, and Baxter has not set forth any explanation why the disclosure was inadvertent. Accordingly, there is no showing that reasonable precautions were taken to prevent disclosure. *See Urban Outfitters*, 203 F.R.D. at 380 (party did not take reasonable precaution to avoid disclosure where document was produced during formal discovery and pursuant to attorney review).

Baxter has not shown why a more thorough or proper review of its documents would not have prevented disclosure or permitted it to have rectified erroneous disclosure in a timely manner.

In the present case, although the scope of the discovery was relatively large, it was not so large that precautions to prevent disclosure could not have been properly taken. *See Urban Outfitters*, 203 F.R.D. at 380 (waiver found when document included in a total of forty documents);

5

*Tokar*, 1999 WL 138814 at * 2 (waiver found in document production of approximately 2,000 pages); *cf. R.J. Reynolds*, 2001 WL 1571447 at * 3 (waiver not found in document production of 750,000 pages).

Also, the inadvertent disclosure was complete. *See Draus v. Healthtrust, Inc.*, 172 F.R.D. 384, 389 (S.D. Ind. 1997) (extent of disclosure complete when opposing party had opportunity to read the document prior to the request to return the letter); *Central Die Casting & Manuf., Co. v. Tokheim Corp.*, 1994 WL 444796 (N.D. Ill. Aug. 16, 1994) (same).

Although it can be argued that it is unfair to waive the privilege, the fairness issue still weighs in favor of Mattenson. The document was not known by Baxter to have been produced until Mattenson brought it to the Court's attention. At this time, the document had already been fully disclosed; and Mattenson contends that the letter is highly relevant to their case. "The disclosure of the [document] is a bell that has already been rung. The court cannot unring it by ordering that copies be returned to [Baxter]." *Draus*, 172 F.R.D. at 389; *see also Central Die*, 1994 WL 444796 at * 5 (finding fairness weighed in favor of opposing party after document had been fully disclosed and relied upon by opposing party).

In sum, the above factors weigh in favor of finding waiver as to the inadvertent disclosure of Court's Exhibit # 2. Accordingly, Baxter is deemed to have waived the attorney-client privilege as to Bradley's notes of July 30, 2001.

Also, a party may waive the attorney-client privilege by putting at issue communications between a client and an attorney. *See Fischel & Kahn, Ltd. v. Van Straaten Gallery, Inc.*, 189 Ill. 2d 579, 585 (2000). As to the July 30, 2001 conversation between Persky and Bradley, Persky testified that she did not speak to Bradley to obtain legal advice and that no legal advice was

provided. As to the July 16, 2001 meeting with Bradley, Persky and Schiffer testified that when they met on July 16, 2001, they met with Bradley in her capacity as a human resource representative and not to obtain legal advice. Schiffer also testified that he neither sought nor received legal advice from Bradley at the July 16, 2001 meeting. The alleged privilege and contrary testimony put the subject communications at issue. Thus, any privilege would also be waived for both of the disputed documents on this basis.

As to Baxter's claim that the disputed documents are not discoverable under the work product doctrine, Federal Rule of Civil Procedure 26(b)(3) states in relevant part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney ...) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Accordingly, if a party demonstrates that materials in its possession that would otherwise be discoverable were prepared in anticipation of litigation, the materials are considered work product and become subject to a qualified privilege from discovery.

In the instant case, Persky testified under oath that the conversation between she and Bradley on July 30, 2001, did not take place in anticipation of litigation. Both Persky and Schiffer testified that the July 16, 2001 meeting did not take place in anticipation of litigation. Such testimony is contrary to the claim of work product privilege. Accordingly, the claim of work product privilege is overruled.

Lastly, the disputed documents are discoverable pursuant to the crime/fraud exception to the attorney-client and work product privilege.

Following the contrary testimony cited above, the Court ordered that Defendant provide the disputed documents to the Court for an *in camera* review to determine the applicability of the crime/fraud exception. Such a review was appropriate because this testimony provided a good faith belief that the materials may reveal evidence that the crime/fraud exception applies. *See United States v. Zolin*, 491 U.S. 554, 572 (1989) (*Zolin*).

Under the crime/fraud exception, the attorney-client and/or work product privilege does not extend to communications made for the purpose of getting advice for the commission of a fraud or a crime. *See Zolin*, 491 U.S. at 563; *Vardon Golf Co. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 535 (N.D. Ill. 2003) (*Vardon*). The crime/fraud exception applies when the party attempting to circumvent the privilege makes a *prima facie* showing of fraud and the communications in question are in furtherance of the misconduct. *Vardon*, 213 F.R.D. at 535. A *prima facie* showing of fraud does not require evidence that would support a verdict "but whether it calls for inquiry." *See In re Feldberg*, 862 F.2d 622, 626 (7th Cir. 1988) (*Feldberg*). "[A] *prima facie* case must be defined with regard to its function: to require the adverse party, the one with superior access to the adverse party, the one with superior access to the evidence and in the best position to explain things, to come forward with that explanation. If the court finds the explanation satisfactory, the privilege remains." *Feldberg*, 862 F.2d at 626.

Based on the Court's review of the disputed documents, the alleged claim of privilege, and the testimony of Persky and Schiffer, Mattenson has made a *prima facie* showing of fraud and that the documents in dispute are in furtherance of such misconduct. The testimony cited above is

contrary to the alleged privilege. The face of the documents at issue apparently contradicts the claim of privilege as well as Baxter's defense to the lawsuit. Furthermore, Baxter has failed to come forth with a reasonable explanation for the discrepancy between the alleged privilege, the witnesses' testimony, and the theories of the case. Accordingly, Baxter's attorney-client and work product privilege does not protect the disputed documents from disclosure pursuant to the crime/fraud exception.

Dated: November 25, 2003

JOHN W. DARRAH
United States District Judge