

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 3283 | DATE | 6/3/2004 |
| CASE TITLE | Mattenson vs. Baxter Healthcare Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons stated in the attached memorandum opinion and order, based on the lack of evidence before the Court to reasonably calculate front pay, an award of front pay would be unduly speculative. Judgment is amended in favor of Mattenson in the amount of $1,065.582.56. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 0 4 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 139 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| MF | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED
JUN 0 4 2004**

CHARLES R. MATTENSON, )
)
    Plaintiff, ) No. 02 C 3283
)
v. ) Judge John W. Darrah
)
BAXTER HEALTHCARE CORPORATION, )
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Charles Mattenson, filed suit against Defendant, Baxter Healthcare Corporation, alleging age discrimination in violation of the Age Discrimination Employment Act of 1967 ("ADEA"). On November 25, 2003, following trial, a jury awarded Mattenson backpay damages in the amount of $532,791.28. The jury also found that Baxter's conduct was willful. Accordingly, judgment was amended in favor of Mattenson in the amount of $1,065,582.56.

On February 2, 2004, a trial before the Court without a jury was held on the issue of awarding Mattenson front pay. Mattenson seeks front-pay damages in the amount of $3,291,406, which includes wages for approximately twelve years until Mattenson reaches the age of sixty-five. Baxter argues that no front pay should be awarded.

The Court has considered the evidence, including the testimony of witnesses and exhibits, and has further considered the written arguments of counsel for the parties and the authority cited therein.

Pursuant to Federal Rule of Civil Procedure 52, the Court hereby enters the following Findings of Fact and Conclusions of Law which are based upon consideration of all the admissible evidence as well as the Court's determination of the credibility of the trial witnesses. To the extent

that Findings of Fact, as stated, may be considered Conclusions of Law, they shall be deemed Conclusions of Law. Similarly, to the extent that matters expressed as Conclusions of Law may be considered Findings of Fact, they shall also be deemed Findings of Fact.

## FINDINGS OF FACT

Mattenson is 54 years old. It was his intention to work for Baxter until he was 65 years old because of his family obligations, including two children of ages 11 and 13, and health insurance. Mattenson had worked for Baxter as a patent attorney for fourteen years and has a Master's Degree in biomedical engineering. At the time of his termination in 2001, Mattenson's salary was approximately $140,000 per year, and a total income of approximately $240,000 per year, including bonuses and other fringe benefits.

Since trial, Mattenson has contacted twenty-three entities, including law firms, corporations, and employment search firms, in his search for employment. Mattenson received a few responses from his inquiries, including a negative response from an attorney search firm and a law firm. Other entities responded that they would keep Mattenson's credentials on file. Mattenson did not receive a positive response from any of the twenty-three entities.

Mattenson continues to search for employment by reviewing ads in publications, searching the Internet, and speaking with acquaintances. In addition, Mattenson has actively sought clients for his own law practice in an attempt to make some income. Mattenson conceded that he did not review every job vacancy entity presented by Baxter that lists vacancies for patent attorneys. He did not review every entity because many of the entities merely duplicated job vacancies he had previously reviewed, many of the entities were seeking job solicitations rather than actual jobs, and some of the Internet sites did not appear valid.

Baxter identified several patent attorney positions that were advertised to which Mattenson had not applied. Mattenson did not believe that any of the positions were appropriate for a person of his background and experience. Mattenson did not believe that any of the attorney positions identified by Baxter were substantially comparable to his position with Baxter.

Dr. Larry DeBrock, an economic expert, provided a report as to lost back and future earnings. Dr. DeBrock calculated the following front pay, assuming Mattenson retired at the age of 65 and did not mitigate damages:

| | |
|---|---|
| Salary and Bonus Loss: | $1,955,529 |
| Stock Option Losses: | $ 512,349 |
| Fringe Benefit Losses: (Option 1)[1] | $ 420,439 |
| Direct Calculation of Fringe Benefits: (Option 2)[2] | $ 823,539 |

The total front pay calculated using Option 1 for fringe benefits is $2,888,316. The total front pay calculated using Option 2 for fringe benefits is $3,291,416.

Dr. Roger Skurski, Baxter's economic expert, identified "errors" in Dr. DeBrock's report. Dr. Skurski calculated Mattenson's bonuses and stock options for the years 2001 through 2003 using figures he obtained from Baxter of bonuses and stock options employees received for those years.

---

[1] Using the value of 21.5% of salary and bonus - the average value of fringe benefits for white-collar employees according to the U.S. Department of Labor, Bureau of Labor Statistics publication, USDL 03-297, *Employer Costs for Employee Compensation - March 2003*.

[2] Calculated as follows: [Pension Shortfall] $524,357 + [Health & Dental Coverage] $168,039 + [Life Insurance Coverage] $66,154 + [Employee Stock Purchases] $35,656 + [401(k) Shortfall] $29,333

3

Dr. DeBrock did not use the actual figures and forecast what he thought Mattenson's bonuses and stock options would have been for those years. Using the figures Baxter employees actually received for 2001 through 2003, Dr. Skurski calculated Mattenson's salary and bonus loss as $1,943,659 and a stock option loss of $353,022. Adjusting for bonuses, stock options, life expectancy, post-trial income, a net discount of 1.71 percent, and benefits, Dr. Skurski calculated Mattenson's salary and bonus loss at $1,801,492 at the age of 65 (compared to Dr. DeBrock's calculated loss of $1,955,529).

Assuming that Mattenson worked until 62 years of age, Dr. Skurski calculated his loss, including accounting for mitigating damages, at $838,205 using Option 1 for benefits and $1,050,206 using Option 2 for benefits. Dr. Skurski calculated a discount rate of 1.71 percent using a 20-year average. The use of a 20-year average included the use of some of the highest interest rates in the last century, which in turn increased the discount rate. Dr. DeBrock used a 12-year average, which did not include such high interest rates. As such, Dr. Skurski's discount rate of 1.71 percent is significantly greater than Dr. DeBrock's discount rate of 0.5 percent.

## CONCLUSIONS OF LAW

The ADEA allows trial courts, at their discretion, to award front pay. *See Hybert v. Hearst Corp.*, 900 F.2d 1050, 1054-55 (7th Cir. 1990). Front pay is designed to place a plaintiff in the identical position he would have occupied had he been reinstated. *See Bruso v. United Airlines, Inc.*, 239 F.3d 848, 862 (7th Cir. 2001) (*Bruso*). A plaintiff seeking front pay must provide the court with "the essential data necessary to calculate a reasonably certain front pay award." *McKnight v. General Motors Corp.*, 973 F.2d 1366, 1372 (7th Cir. 1992) (*McKnight*). This information includes the amount of the proposed award, the length of time the plaintiff expects to work for the defendant, and the applicable discount rate. *See McKnight*, 973 F.2d at 1372. While front pay awards are often

4

speculative, such awards cannot be unduly speculative. The longer the prospective front pay period, the more speculative the damages become. *See McKnight*, 973 F.2d at 1372. If the plaintiff fails to provide the court with the essential data necessary to calculate a reasonably certain front pay award, the court may deny the request. *See McKnight*, 973 F.2d at 1372.

Front pay is especially appropriate when the plaintiff has no reasonable prospect of obtaining comparable employment or when the time period of front pay is relatively short. *See McNeil v. Economics Lab., Inc.*, 800 F.2d 111, 118 (7th Cir. 1986) (*McNeil*). Front pay may be less appropriate if liquidated damages were awarded. Furthermore, the amount of front pay may be limited by the plaintiff's duty to mitigate damages. *See McNeil*, 800 F.2d at 118.

When calculating front pay awards, the court terminates its inquiry at the point at which the plaintiff "can reasonably be expected to have moved on to similar or superior employment." *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 954 (7th Cir. 1998). Front pay is "not intended to insure a plaintiff's future financial success." *McKnight*, 973 F.3d at 1371. Instead, "[d]amages should ordinarily extend only to the date upon which 'the sting' of any discriminatory conduct has ended." *McKnight*, 973 F.3d at 1371.

Mattenson seeks over $3,000,000 in front pay as calculated by his economic expert. The amount sought includes an applicable discount rate. Plaintiff also testified that he had planned to continue working for Baxter until he was 65 years of age. As such, Mattenson seeks over eleven years of front pay.

However, the amount of front pay that Mattenson seeks does not include any reduction for mitigating income over the next eleven years although Mattenson is attempting to open his own practice and had made some income working as a private practitioner. Furthermore, Mattenson

5

provided no evidence of a reasonable time in which it would be expected that he could find similar employment. Instead, Mattenson "assumes" that he will not be able to find similar, or any, type of employment in the next eleven years. While Mattenson established that he has a specialized practice in the field of biomedical patent law, Mattenson is generally highly educated with a graduate degree in engineering as well as a juris doctor and significant professional experience. The twenty-plus inquiries that Mattenson sent in search for employment fail to establish that Mattenson will not receive similar employment in the next eleven years and fail to prove when Mattenson can reasonably expect to obtain such employment.

In light of the lengthy time of front pay sought, the failure to include any reduction in the amount sought by mitigating damages by professional employment, albeit at a status less than his employment with Defendant, and the failure to demonstrate a reasonable time in which it is expected that he could reasonably be expected to have moved on to similar or superior employment, Mattenson has failed to prove that front pay is appropriate or in what total amount. Based on the lack of evidence before the Court to reasonably calculate front pay, an award of front pay would be unduly speculative.

Dated: June 3, 2004

JOHN W. DARRAH
United States District Judge