Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3283 | **DATE** | 11/29/2004 |
| **CASE TITLE** | | Mattenson vs. Baxter Healthcare | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, Mattenson's motion for an amended judgment is denied. Baxter's renewed motion for judgment as a matter of law and motion for a new trial are denied. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | NOV 3 0 2004 | |
| | Notified counsel by telephone. | | date docketed | 163 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | MF | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |


| | |
|---|---|
| CHARLES R. MATTENSON, ) | |
| ) | |
| Plaintiff, ) | No. 02 C 3283 |
| ) | |
| v. ) | Judge John W. Darrah |
| ) | |
| BAXTER HEALTHCARE CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Charles Mattenson, filed suit against Defendant, Baxter Healthcare Corporation, alleging age discrimination in violation of the Age Discrimination Employment Act of 1967 ("ADEA"). A jury trial was commenced. At the close of Mattenson's case, Baxter moved for judgment as a matter of law as to all of Mattenson's claims. At the close of all of the evidence and before the case was submitted to the jury, Baxter again moved for judgment as a matter of law as to all of Mattenson's claims. The Court denied Baxter's motions and submitted the case to the jury. On November 25, 2003, the jury found for Mattenson and awarded him backpay damages in the amount of $532,791.28. The jury also found that Baxter's conduct was willful. Accordingly, judgment was amended in favor of Mattenson in the amount of $1,065,582.56.

On February 2, 2004, a trial before the Court without a jury was held on the issue of awarding Mattenson front pay. On June 3, 2004, the Court denied Mattenson's front-pay damages. Plaintiff has moved to amend the Court's finding and judgment as to front pay pursuant to Rule 52(b) or, alternatively, under Rule 59(e). Defendant has renewed its motion for judgment as a matter of law or, in the alternative, for a new trial.

163

*Mattenson's Motion for an Amended Judgment*

Rule 52(b) provides that "[o]n a party's motion filed no later than 10 days after entry of judgment, the court may amend its findings – or make additional findings – and may amend the judgment accordingly." Fed. R. Civ. P 52(b). Similarly, Rule 59(e) provides that a motion to alter or amend judgment may be filed no later than 10 days after entry of judgment. Fed. R. Civ. P. 59(e). However, motions made pursuant to Rule 52(b) and/or 59(e) are not intended to relitigate old matters or to allow the parties to present new theories of the case. Instead, these motions are intended to correct manifest errors of law or to present newly discovered evidence. *See MacSteel Int'l USA Corp. v. Superior Prod. Co.*, 2002 WL 1067248 (N.D. Ill. May 28, 2002); *Evans, Inc. v. Tiffany & Co.*, 416 F. Supp. 224, 244 (N.D. Ill. 1976); *Heck v. Rosenthal Collins Group*, 2000 WL 91896 (N.D. Ill. Jan. 14, 2000).

It is undisputed that the ADEA allows trial courts, at their discretion, to award front pay. The issue of front pay lies with the court, not the jury. *See Williams v. Pharmacia, Inc.*, 137 F.3d 944, 951-53 (7th Cir. 1998) (*Williams*). Front pay compensates a plaintiff for the immediate effects of plaintiff's unlawful termination of employment. Front pay gives the plaintiff the earnings he would have received had he been reinstated. Thus, front pay gives a plaintiff the present value of the earnings from his old job less the earnings from his new or expected job. *See Williams*, 137 F.3d at 953-54. Front pay may be awarded in Title VII cases. *See Williams*, 137 F.3d at 951.

Mattenson has not established the existence of any manifest errors of law or fact in the June 3, 2004 Memorandum Opinion and Order denying front pay damages or presented any newly discovered evidence as required by Rules 52(b) or 59(e). Rather, Mattenson appears to be attempting to relitigate the determination by this Court regarding the lack of evidence to reasonably calculate

2

front pay and the resulting unduly speculative nature of any such award. The findings of the Court and the conclusions of law are fully supported by the evidence before the Court. Accordingly, Mattenson's Motion to Amend Judgment is denied.

*Baxter's Renewed Motion for Judgment as a Matter of Law*

A Rule 50 motion for judgment as a matter of law mirrors that involved in evaluating a summary judgment motion. *See Appelbaum v. Milwaukee Metro. Sewage Dist.*, 340 F.3d 573, 578-79 (7th Cir. 2003) (*Appelbaum*). The court looks to all of the evidence in the record and asks whether any reasonable jury could have found for the prevailing party. The evidentiary record is construed in the prevailing party's favor, drawing all reasonable inferences in that party's favor and resisting any temptation to weigh the evidence or have the court make its own credibility determinations. *See Appelbaum*, 340 F.3d at 579. Following a jury trial, the court must bear in mind that the question is not whether the jury believed "the right people," but only whether the jury was presented with a legally sufficient amount of evidence from which it could reasonably derive its verdict. *See Massey v. Blue Cross-Blue Shield of Ill.*, 226 F.3d 922, 924 (7th Cir. 2000) (*Massey*). Overturning a jury verdict is not something the courts may do lightly. *See Massey*, 226 F.3d at 925.

Baxter argues that judgment as a matter of law is proper because Mattenson failed to prove critical elements of his claim.

The Age Discrimination in Employment Act (ADEA) makes it unlawful to "discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). Under the *McDonnell Douglas* burden-shifting test, the plaintiff must first establish a *prima facie* case by the preponderance of the evidence. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 982 (7th Cir. 1999)

3

(*Jackson*). The plaintiff must show that his age was a determining factor in the employer's decision. *See Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 393 (7th Cir. 1998). The plaintiff must establish that: (1) he was in a protected class (40 years of age or older) (29 U.S.C. § 631(a)); (2) he performed his job duties such that he was meeting his employer's legitimate expectations; (3) despite his performance, he suffered an adverse employment action; and (4) similarly situated younger employees were treated more favorably. *See Bennington v. Caterpillar Inc.* 275 F.3d 654, 659 (7th Cir. 2001) (*Bennington*).

Baxter argues that Mattenson failed to prove that he was meeting Baxter's legitimate expectations. Baxter cites Mattenson's July 2001 review and performance improvement plan ("PIP") which include Mattenson's failure to file certain foreign patents on time, that engineers complained about Mattenson's lack of clarity and the lack of direction of his legal advice, and that Mattenson did not create a written patent strategy for the Pegasus project. Baxter argued to the jury that the PIP and the admission by Mattenson to aspects of the July 2001 review proved that Mattenson was not meeting Baxter's legitimate expectations. Mattenson, however, provided sufficient evidence to allow the jury to reject Defendant's argument and conclude that Mattenson was meeting Baxter's legitimate expectations. This evidence included Mattenson's employment ratings immediately prior to the July 2001 review in which Mattenson was rated "meets expectations," Mattenson's receipt of merit raises and merit-based stock options just prior to July 2001, and Mattenson's supervisor's testimony that she had not planned on terminating Mattenson's employment in July 2001. Furthermore, Mattenson argued and presented evidence that the July 2001 review and PIP were not created to inform Mattenson of his deficiencies and were a

ruse to "force" Mattenson out of Baxter.[1] Based on all of the evidence of record, there was ample evidence for a reasonable jury to find that Mattenson was meeting Baxter's legitimate expectations.

Baxter also argues that Mattenson failed to establish that similarly situated employees were treated more favorably. Treating similarly situated younger employees more favorably includes the hiring of someone substantially younger or other such evidence indicating that it was more likely than not that the plaintiff's age was the reason for the discharge. *See Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1090 (7th Cir. 2000); *Cianci v. Pettibone Corp.*, 152 F.3d 723, 738 (7th Cir. 1998).

Mattenson provided such evidence, including evidence that Mattenson's replacement, Joseph Regan, was sixteen years younger than Mattenson, was not within the protected class, and was paid a higher salary than Mattenson. Accordingly, a reasonable jury could have found that similarly situated employees were treated more favorably than Mattenson.

Baxter also argues that Mattenson failed to establish that Baxter's actions were a pretext to cover up discrimination. A plaintiff can establish pretext by showing that the employer's explanation is unworthy of credence or that a discriminatory reason more likely motivated the employer. *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 395 (7th Cir. 1998) (*Debs*). Pretext in this context does not mean a mistake; rather, it means "a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir 1995). An honest belief in the

---

[1] The evidence included testimony of Marla Persky, Deputy Counsel of Baxter, that she was committed to helping Mattenson succeed and had no intention of firing Mattenson which was repudiated by the introduction of a memorandum written by Stephanie Bradley, Vice-President and Associate General Counsel of Baxter, that indicated Mattenson would not be employed by Baxter within six months. Persky also testified that no litigation was contemplated at the meeting with Bradley; this is contrary to Bradley's assertion during discovery that the notes of the meeting were privileged as Bradley's work product, prepared in anticipation of litigation. This position was reasonably supported by the contents of the notes.

5

nondiscriminatory reason offered by the decision maker will be sufficient even if the reasons are foolish, trivial, or even baseless. *Debs*, 153 F.3d at 396.

Mattenson provided sufficient evidence to allow a reasonable jury to conclude that Baxter's explanation for its actions toward Mattenson were unworthy of credence or that a discriminatory reason more likely motivated Baxter. This evidence (some of which has been discussed above) included Mattenson's positive employment ratings immediately prior to the July 2001 review and Mattenson's receipt of merit raises and merit-based stock options just prior to July 2001. Mattenson also presented evidence that Baxter contemplated discharging Mattenson prior to the July 2001 review and that the July 2001 review was a pretense to "force" Mattenson out of Baxter. Furthermore, Mattenson impeached Baxter's witnesses, who testified that Baxter had not contemplated discharging Mattenson prior to the July 2001 review and denied the July 2001 review was a premeditated attempt to force Mattenson out of Baxter.

Based on the above, Baxter's Renewed Motion for Judgment as a Matter of Law is denied.

*Baxter's Motion for a New Trial*

Pursuant to Federal Rule of Civil Procedure 59, a new trial may be granted if the verdict is against the manifest weight of the evidence or, for other reasons, the trial was not fair to the moving party – including errors in the admission or exclusion of evidence. *See Shick v. Illinois Dept. of Human Serv.*, 307 F.3d 605, 611 (7th Cir. 2002) (*Shick*). A new trial may be granted in the event of the admission or exclusion of evidence only if such evidence had a substantial influence over the jury which resulted in a verdict inconsistent with substantial justice. *See Shick*, 307 F.3d at 611.

6

"[E]videntiary errors satisfy this standard only if a significant chance exists that they affected the outcome of the trial." *Hasham v. California State Bd. of Equalization*, 200 F.3d 1035, 1048 (7th Cir. 2000).

Baxter argues that it is entitled to a new trial because the jury verdict was against the manifest weight of the evidence. As set out above, there was a reasonable basis in the record to support the jury's verdict.

Baxter argues that the Court improperly admitted evidence of lost future earnings because Mattenson was not seeking lost future earnings, and the introduction of such evidence was irrelevant and highly prejudicial to Baxter.

At trial, Mattenson sought to introduce evidence, through its expert economics expert, Lawrence DeBrock, of the amount of money that Mattenson would have made if he had remained employed by Baxter until his retirement at the age of sixty-five. Baxter argued that such testimony could not be presented as to the issue of lost future earnings because lost future earnings are not recoverable in an age discrimination case. Mattenson originally contended that the testimony was admissible as to lost future earnings.

DeBrock testified that Mattenson's losses from the date of termination to the time of trial was $517,997.00. Baxter's objection to the testimony as to lost future earnings was overruled. DeBrock testified that Mattenson's losses from the start of the trial to the age of sixty-five, if he had stayed at Baxter, with no mitigating earnings, was $3,293,878.

However, before the case went to the jury, Mattenson moved to withdraw his claims for lost future earnings. Baxter did not object at the time the claims were withdrawn and did not seek any type of limiting instruction as to DeBrock's lost earnings testimony and acquiesced in Mattenson's

7

decision.[2] Plaintiff's Exhibit No. 112, which contained DeBrock's calculations of backpay and "lost future earnings" was redacted as to the "lost future earnings" by agreement of the parties. Plaintiff's redacted Exhibit No. 112 indicated that Mattenson's lost earnings until the time of trial was $517,997.00 and did not contain the $3 million-plus claim for lost future earnings. No jury instruction was given regarding lost future earnings.

Contrary to front-pay damages discussed above, lost future earnings is a common-law tort remedy available to plaintiffs in a Title VII case through expanded remedial provisions recoverable via the Civil Rights Act of 1991. *See Williams*, 137 F.3d at 952.

Lost future earnings compensates a plaintiff for a lifetime of diminished earnings resulting from the reputational harms the plaintiff suffers as a result of the employer's discrimination. *See Williams*, 137 F.3d at 953. Unlike front pay, which is limited in duration to the point in which the plaintiff finds employment comparable or superior to his old job, lost future earnings are not limited in duration in the same way. *See Williams*, 137 F.3d at 954.

---

[2]Plaintiff's Attorney: Under the circumstances the plaintiff thinks it would be more prejudicial to its position to suffer a possible remand from the appellate court than have Your Honor decide it, so we are waiving that issue [lost future earnings] and asking Your Honor to decide the front pay issue yourself.

The Court: What do you say to that?

Defendant's Counsel: Yes, it was our objection that front pay should go to Your Honor; and there was no such thing as lost future earnings under the ADEA, so that's fine.

The Court: All right. Then that issue is removed, and any instruction in that regard will be removed.

8

> The reputational or other injury that causes the diminution in expected earnings can stay with the employee indefinitely. Thus, the calculation of front pay differs significantly from the calculation of lost future earnings. Whereas front pay compensates the plaintiff for the lost earnings from [his] old job for as long as [he] may have been expected to hold it, a lost future earnings award compensates the plaintiff for the diminution in expected earnings in all of [his] future jobs for as long as the reputational or other injury may be expected to affect [his] prospects.
>
> * * *
>
> Properly understood, the two types of damages compensate for different injuries and require the court to make different kinds of calculations and factual findings.

*Williams*, 137 F.3d at 954.

The Civil Rights Act of 1991 provided compensation under Title VII for traditional harms associated with personal injury, such as pain and suffering and harm to reputation. Prior to the Civil Rights Act of 1991, such personal injury harms were not compensable. *See Commissioner of Internal Revenue v. Schleier*, 515 U.S. 323, 335-36 (1995) (*Schleier*).

"Like the pre-1991 version of Title VII, the ADEA provides no compensation 'for any of the other traditional harms associated with personal injury.' Monetary remedies under the ADEA are limited to back wages, which are clearly of an 'economic character,' and liquidated damages, which ... serve no compensatory function." *Schleier*, 515 U.S. at 336. Thus, the ADEA does not permit a separate recovery of compensatory damages for pain and suffering, emotional distress, or injury to professional reputation. *See Schleier*, 515 U.S. at 326; *Downey v. Commissioner of Internal Revenue*, 33 F.3d 836, 839 (7th Cir. 1994) (*Downey*); *Pfeiffer v. Essex Wire Corp.*, 682 F.2d 684, 688 (7th Cir. 1982) (*Pfeiffer*); *Courtney v. City of New York*, 20 F. Supp. 2d 655, 660 (S.D.N.Y. 1998) (*Courtney*); *McLaren v. Emory Univ.*, 705 F. Supp. 563, 566 (N.D. Ga. 1988) (*McLaren*); *Rokosik v. City of Chicago*, 1999WL966098 (N.D. Ill. Oct 13, 1999) (*Rokosik*).

Whether lost future earnings, as defined and clarified by the Seventh Circuit in *Williams*, are recoverable in an ADEA case appears to be a question of first impression but need not be determined in the instant case.

The parties agreed that the section of Plaintiff's Exhibit No. 112 that addressed lost future earnings would be redacted and not presented to the jury. At that time, Defendant did not move for a mistrial or seek any limiting instruction. During closing arguments, neither party discussed the issue of lost future earnings. Plaintiff argued that the undisputed sum of $517,997.00 for backpay damages was a conservative amount in light of other benefit losses, such as paying $700 per month for his wife's insurance instead of the $70.00 a month it cost Mattenson while employed at Baxter. Furthermore, the jury was properly instructed as to how to calculate damages, without an instruction as to lost future earnings. The jury's award of $532,971.28 was consistent with the included undisputed loss of $517,997.00 in backpay damages and resulted in a verdict consistent with the evidence and substantial justice. *See Shick*, 307 F.3d at 611. DeBrock's testimony in this regard did not have a substantial influence on the jury which resulted in a verdict inconsistent with substantial justice. *See Shick*, 307 F.3d at 611.

Baxter also argues that the Court's admission of "stray" ageist remarks by non-decision makers constituted error.

Generally, comments by non-decision makers are insufficient evidence of discriminatory intent. *See Lucas v. Chicago Transit Authority*, 367 F.3d 714, 730 (7th Cir. 2004). However, express discriminatory comments made by decision makers, or those that provide input into the decision, made around the time of and in reference to an adverse action may constitute evidence of discriminatory intent. If a person "provides input" into the decision making process, it may be

possible to infer that the decision maker was influenced by such animus in making their decision. *See Hunt v. City of Markham*, 219 F.3d 649, 652-53 (7th Cir. 2000). Furthermore, while inappropriate remarks not shown to be directly related to an employment decision may not support a direct-method-of-proof discrimination case, such remarks, in connection with other evidence, may support a case under the indirect *McDonnell Douglas* method. *See Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 762 (7th Cir. 2001) (*Gorence*).

In this case, Mattenson elicited testimony of "stray" comments made by several corporate personnel concerning the age of many Baxter employees. Walter Casten, a Director of Global Logistics for Baxter's Renal Division, testified about comments he heard at the March 2001 meeting. At the meeting, Robert Hribernik, Vice President of Baxter International, stated that Baxter had too many "old and expensive" employees. Steve Schappe, Vice President of Transportation, "backed" Hribernik at the meeting and stated that every time he meets an employee, the "first thing they tell him is how old they are and how many retirement points they have." Gabriele Eaton, a Human Resource "Person," also "backed" Hribernik and stated that "we had too many people that were too old . . . it was imperative that we clear out the old, dead wood."

Casten also testified that a few days after the March 2001 meeting, he spoke with Barbara Morris, the Vice President of Corporate Human Resources, about the comments at the March 2001 meeting. Morris agreed with Schappe for the most part and also stated that they cannot use the word "old."

In June 2001, Casten met with Donald Davis, Casten's superior, about an incentive plan. Davis did not want to provide the incentive plan to two older employees because Davis believed that the purpose of the incentive plan was to provide incentive to up and coming young people.

11

The above stray remarks were admissible to show an inference of discriminatory intent under the indirect burden-shifting method of proof relied upon by Plaintiff at trial and were not unfairly prejudicial to Baxter. *See Gorence*, 242 F.3d at 762; *Huff v. UARCO, Inc.*, 122 F.3d 374, 385 (7th Cir. 1997) (remarks unrelated to employment decision were probative of discriminatory bias when assessing whether an employer's reasons for an adverse employment action are pretextual). The probative value of these statements for this purpose is not substantially outweighed by danger of unfair prejudice to Baxter.

Baxter also argues that the Court improperly admitted evidence regarding three other Baxter Renal Division employees, improperly excluded evidence of Plaintiff's performance prior to 1998, improperly admitted the notes of Stephanie Bradley, improperly admitted evidence of post-termination effects on Plaintiff's personal life, misstated the law in the burden instruction provided to the jury, and erred in refusing to instruct the jury on critical issues. Baxter has not presented any new arguments in support of these contentions other than presented at trial. These arguments were considered and ruled upon. Accordingly, Baxter's Motion for a New Trial on these grounds are denied for the reasons previously set forth by the Court.

For the foregoing reasons, Mattenson's Motion for an Amended Judgment is denied. Baxter's Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial are denied.

Dated: November 29, 2004

JOHN W. DARRAH
United States District Judge

12